**No. 24-6623**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

———————————————

Kara Sandler,

*Plaintiff-Appellee*

v.

Modernizing Medicine, Inc.,

*Defendant-Appellant*

———————————————

On Appeal from the United States District Court
for the Southern District of California

Case No. 3:24-cv-00812-AJB-BTC
Hon. Anthony J. Battaglia

———————————————

**PLAINTIFF-APPELLEE KARA SANDLER'S ANSWERING BRIEF**

———————————————

Jenna Rangel
Amber L. Eck
HAEGGQUIST & ECK, LLP
225 Broadway, Suite 2050
San Diego, CA 92101
Tel.: (619) 342-8000

*Attorneys for Plaintiff-Appellee*
Kara Sandler

# TABLE OF CONTENTS

**Page(s)**

I.     INTRODUCTION ..................................................................................1

II.    STATEMENT OF JURISDICTION ....................................................2

III.   STATEMENT OF THE CASE .............................................................2

    A.   Ms. Sandler Was Employed by ModMed's Predecessor, gMed, Inc..............2

    B.   ModMed Acquired gMed and Retained Ms. Sandler on the Condition She Sign the Employment Agreement.......................................................................3

    C.   The Employment Agreement Contains Numerous One-Sided Provisions Reserving Court Action for ModMed, but Not Ms. Sandler ..................................6

    D.   After Ms. Sandler Filed Her Complaint in Court, ModMed Moved to Compel Her to Arbitration; The District Court Denied ModMed's Motion..........9

IV.    SUMMARY OF THE ARGUMENT...............................................11

V.     STANDARD OF REVIEW.................................................................11

VI.    ARGUMENT....................................................................................12

    A.   The District Court Properly Ruled on the Gateway Issue of Arbitrability ...14

        1.   Delegation of Arbitrability Requires Clear and Unmistakable Intent with Ambiguity to be Construed in Favor of Judicial Determination ...............14

        2.   The Incorporated Delegation Clause Conflicts with the Express Severability Clause and Creates Ambiguity as to the Parties' Intent.........16

        3.   California Precedent is Clear – Conflicting Delegation and Severability Clauses Preclude the Required Finding of Clear and Unmistakable Intent to Delegate Arbitrability ...............................................................................19

        4.   *Mohamed v. Uber Technologies* is Distinguishable and Does Not Resolve the Ambiguity Caused by Conflicting Severability Clauses .....................25

5. The Court Should Not Rely on District Court Cases in the Face of Relevant California Appellate Decisions ...............................................................28

B. The District Court Properly Found the Arbitration Provision is Unconscionable and Unenforceable ........................................................................32

1. ModMed's Arbitration Provision is Subject to All Defenses that Apply to Contracts Generally Under California Law .................................................33

2. The District Court Correctly Held That the Scope of the Parties Subject to Arbitration Lacks Mutuality..........................................................................35

3. The District Court Correctly Held That the Jury Waiver Provision Lacks Mutuality ......................................................................................................37

4. The District Court Correctly Held the Infinite Duration of the Arbitration Provision Renders it Substantively Unconscionable ...................................39

5. The District Court Correctly Held the One-Sided Carve-Outs of ModMed's Claims is Substantively Unconscionable ......................................................40

C. The District Court Properly Concluded That Severance is Not Appropriate Because the Unconscionable Provisions Permeate the Employment Agreement 44

1. Multiple Unconscionable Provisions are Indicative of an Agreement Tainted with Illegality ..................................................................................45

2. The District Court Properly Used its Broad Discretion in Declining to Sever..............................................................................................................47

3. ModMed's Arguments Raised for the First Time on Appeal are Improper ... ......................................................................................................................50

VII. CONCLUSION..................................................................................................53

STATEMENT OF RELATED CASES………………………………………………...54

STATEMENT OF COMPLIANCE………………………………………………………55

ADDENDUM

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643 (1986).........15

*Bell v. Redfin Corp.*, No. 20-CV-2264-AJB-AGS, 2021 U.S. Dist. LEXIS 226739 (S.D. Cal. Aug. 12, 2021) ....................................................................... 28, 31

*Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.,* 622 F.3d 996 (9th Cir. 2010) ..........................................................................................................12

*Buchsbaum v. Digit. Intel. Sys., LLC*, No. 20-cv-00706-BAS-AGS, 2020 U.S. Dist. LEXIS 226555 (S.D. Cal. Dec. 2, 2020) ......................................................44

*Cassirer v. Thyssen-Bornemisza Collection Found.*, 862 F.3d 951 (9th Cir. 2017) 12

*Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916 (9th Cir. 2013)............................33

*Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024) ................................................. 1, 12, 13

*Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277 (9th Cir. 2009)................17

*Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681 (1996) ..................................33

*Durruthy v. Charter Commc'ns, LLC*, No. 20-CV-1374-W-MSB, 2020 U.S. Dist. LEXIS 219894 (S.D. Cal. Nov. 23, 2020 ......................................................24

*El Paso v. America W. Airlines, Inc.*, 217 F.3d 1161, 1165 (9th Cir. 2000)...... 40, 50

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)... 13, 14, 15, 16

*Hageman v. Hyundai Motor Am.*, No. 8:23-cv-01045-HDV-KES, 2024 U.S. Dist. LEXIS 236456 (C.D. Cal. Dec. 10, 2024)....................................................24

*Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63 (2019) ...................13

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002)...................................15

*Int'l Bhd. of Teamsters v. NASA Servs., Inc.*, 957 F.3d 1038 (9th Cir. 2020) ..........17

*Jewel Cos. v. Pay Less Drug Stores Nw., Inc.*, 741 F.2d 1555 (9th Cir. 1984)........12

*Johnson v. Walmart Inc.*, 57 F.4th 677 (9th Cir. 2023)............................................17

*Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559 (9th Cir. 2014) .............................14

*L.A. News Serv. v. Reuters Television Int'l*, 149 F.3d 987 (9th Cir. 1998)...............50

*Lee v. Intelius Inc.*, 737 F.3d 1254 (9th Cir. 2013) .................................................12

*Lim v. TForce Logistics, LLC*, 8 F.4th 992 (9th Cir. 2021)......................... 34, 46, 47

*McLellan v. Fitbit, Inc.*, No. 3:16-cv-00036-JD, 2017 U.S. Dist. LEXIS 168370 (N.D. Cal. Oct. 11, 2017)...............................................................................28

*MegaCorp Logistics, LLC v. Turvo, Inc.*, No. 18-cv-01240-EMC, 2018 U.S. Dist. LEXIS 127227 (N.D. Cal. July 30, 2018)....................................................28

*Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201 (9th Cir. 2016)......................... 25, 26

*Momot v. Mastro*, 652 F.3d 982 (9th Cir. 2011)................................................11, 16

*Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257 (9th Cir. 2006) ......................... 12, 43

*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 422 F.3d 782 (9th Cir. 2005) ....................................................................................................................45

*Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069 (9th Cir. 2013) ....................16

*Poublon v. C.H. Robinson Co.*, 846 F.3d 1251 (9th Cir. 2017) ...............................51

*Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63 (2010) ....................... 12, 15, 16, 33

*Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080 (9th Cir. 2024) 42, 43, 46, 47, 48, 50

*Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993 (9th Cir. 2007)...............................29

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010)................ 12, 13

*Suski v. Coinbase, Inc.*, 55 F.4th 1227 (9th Cir. 2022)......................................11, 14

*Taylor v. Shutterfly, Inc.*, No. 18-cv-00266-BLF, 2018 U.S. Dist. LEXIS 154925 (N.D. Cal. Sept. 11, 2018) ...........................................................................28

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468 (1989)...................................................................................................13

*Walsh v. Arizona Logistics, Inc.*, 998 F.3d 393 (9th Cir. 2021) ..............................17

*Wing v. Asarco Inc.*, 114 F.3d 986 (9th Cir. 1997)...................................................45

*Zuckerman v. Charter Commc'ns, LLC*, No. 24-cv-128-WQH-BJC, 2024 U.S. Dist. LEXIS 213337 (S.D. Cal. Nov. 22, 2024)....................................................24

**State Cases**

*Abramson v. Juniper Networks, Inc.*, 115 Cal. App. 4th 638 (2004).......................38

*Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771 (2012) ................................31

*Alberto v. Cambrian Homecare*, 91 Cal. App. 5th 482 (2023)................................53

*Ali v. Daylight Transport, LLC*, 59 Cal. App. 5th 462 (2020) ..................................54

*Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83 (2000)..............

................................................................................. 33, 34, 42, 46, 47, 48, 52

*Baker v. Osborne Development Corp.*, 159 Cal. App. 4th 884 (2008) ............. 22, 23

*Beco v. Fast Auto Loans, Inc.*, 86 Cal. App. 5th 292 (2022) ..................................53

*Cook v. University of Southern California*, 102 Cal. App. 5th 312 (2024) ................

................................................................................. 35, 36, 37, 39, 40, 51

*Davis v. Kozak*, 53 Cal. App. 5th 897 (2020).........................................................53

*Dennison v. Rosland Cap. LLC*, 47 Cal. App. 5th 204 (2020).................... 21, 22, 24

*Dream Theater, Inc. v. Dream Theater*, 124 Cal. App. 4th 547 (2004) ........... 24, 29

*Hartley v. Superior Court*, 196 Cal. App. 4th 1249 (2011) ............................. 23, 34

*Jack v. Ring LLC*, 91 Cal. App. 5th 1186 (2023) ............................................. 26, 31

*Magno v. The Coll. Network, Inc.*, 1 Cal. App. 5th 277 (2016)..............................38

*Mercuro v. Superior Ct.*, 96 Cal. App. 4th 167 (2002) ..........................................48

*Mills v. Facility Solutions Group, Inc.*, 84 Cal. App. 5th 1035 (2022)...................55

*Murrey v. Superior Ct.*, 87 Cal. App. 5th 1223 (2023) ..........................................58

*Nelson v. Dual Diagnosis Treatment Ctr., Inc.*, 77 Cal. App. 5th 643 (2022) .. 19, 42

*Oceanside 84, Ltd. v. Fid. Fed. Bank*, 56 Cal. App. 4th 1441 (1997) ....................19

*Parada v. Superior Court*, 176 Cal. App. 4th 1554 (2009) ...................................23

*Ramirez v. Charter Commc'ns, Inc.*, 16 Cal. 5th 478 (2024) .................... 48, 53, 54

*Sanchez v. Valencia Holding Co.*, 61 Cal. 4th 899 (2015)........................................37

*Serafin v. Balco Props. Ltd., LLC*, 235 Cal. App. 4th 165 (2015)...........................39

**Federal Statutes**

9 U.S.C. §2 ...............................................................................................................13

**State Statutes**

Cal. Civ. Code §1636 ...............................................................................................17

Cal. Civ. Code §1641 ...............................................................................................34

Cal. Civ. Code §1670.5(a)........................................................................................46

## I.     INTRODUCTION

"Arbitration is a matter of contract and consent," and the Supreme Court has "long held that disputes are subject to arbitration if, *and only if*, the parties actually agreed to arbitrate those disputes." *Coinbase, Inc. v. Suski*, 602 U.S. 143, 145 (2024) (emphasis added). Defendant-Appellant Modernizing Medicine, Inc. ("ModMed") unsuccessfully sought to force its former employee, Plaintiff-Appellee Kara Sandler ("Ms. Sandler"), to arbitration based on an employment agreement that Ms. Sandler was required sign to maintain her employment after ModMed acquired the company she had successfully worked at for several years.

In appealing the District Court's detailed and well-reasoned Order Denying ModMed's Motion to Compel Arbitration (ER_3-18), ModMed first seeks to force Ms. Sandler to arbitrate a dispute she did not agree to arbitrate – arbitrability. Longstanding California precedent supports the District Court's finding that conflicting delegation and severability clauses caused ambiguities that precluded the required "heightened standard" of proof that Ms. Sandler "clearly and unmistakably" agreed to arbitrate arbitrability. The District Court did not err in relying on California precedent to find the delegation clause unenforceable and, instead, rightfully decided the gateway issue of arbitrability.

Next, in challenging the District Court's determination of unconscionability, ModMed seeks to enforce an arbitration provision that is riddled with one-sided

carve-outs and a pervasive lack mutuality that evidences an unlawful purpose to force Ms. Sandler to an inferior forum to ModMed's benefit. ModMed then takes its argument a step further and seeks to benefit from its illegality by having the District Court sever the unconscionable terms instead of refusing to enforce the entire agreement, as the District Court was well within its discretion to do. But ModMed should not be rewarded for its unlawful conduct, which will only incentivize it (and other employers) to continue imposing unconscionable arbitration agreements on its employees in the future. The District Court got it right, and this Court should affirm its Order.

## II.     <u>STATEMENT OF JURISDICTION</u>

Ms. Sandler agrees with ModMed's Statement of Jurisdiction.

## III.     <u>STATEMENT OF THE CASE</u>

### A. Ms. Sandler Was Employed by ModMed's Predecessor, gMed, Inc.

On September 23, 2013, Ms. Sandler became employed as an Account Executive for gMed, Inc. ("gMed"), which developed and offered an electronic health records software called "gGastro" for gastroenterologists to track patient care. SER_65. Though gMed's headquarters were in Florida, Ms. Sandler worked remotely from California. *Id.* Ms. Sandler was not required to and did not sign an arbitration agreement as a condition of her employment with gMed. *Id.*

As an Account Executive, Ms. Sandler was responsible for generating sales in gMed's West Territory which was comprised of California, Oregon, Washington, Nevada, Idaho, Wyoming, Montana, Alaska and Hawaii. *Id.* Ms. Sandler was paid a base salary plus commissions based on sales compensation plans that changed annually to accommodate gMed's new quotas, goals, and product offerings, including a switch from licensed-based programs to cloud/subscription-based services. *Id.* Ms. Sandler's fiscal year 2016 sales compensation plan (effective April 1, 2015, through March 31, 2016) offered commissions based on monthly subscriptions fees and annual license maintenance fees, with commissions to be paid upon signing, the month after payment was received, upon monthly subscription fees received, and/or upon the "go-live" of the subscription modules. *Id.* Ms. Sandler worked hard to establish relationships with potential clients in the West Territory to earn these commissions. *Id*.

### B. ModMed Acquired gMed and Retained Ms. Sandler on the Condition She Sign the Employment Agreement

On July 22, 2015, gMed announced its plans to merge with ModMed, which it projected would close in the third quarter of 2015. *Id.* gMed would become a subsidiary of ModMed and continue to offer gMed products and services to the gastroenterology market. SER_65-66. Thereafter, in or about September 2015, Ms. Sandler received a letter from ModMed dated September 2, 2015, notifying her that her employment with gMed would terminate on September 30, 2015, and

offering her employment with ModMed beginning October 1, 2015 "subject to the terms and conditions set forth in this Offer Letter" (the "Offer Letter"). SER_66; *see also* ER_22. Those "terms and conditions" included the following:

> As another condition of your employment, you are required to sign and comply with an At-Will Employment, Confidential Information, Invention Assignment and Arbitration Agreement (the "Confidentiality Agreement") which requires, among other provisions, the assignment of patent rights to certain inventions made during your employment at the Company and nondisclosure of Company confidential or proprietary information. We have enclosed a copy of the Confidentiality Agreement with this Letter. Please note that we must receive your signed Confidentiality Agreement before your first day of employment.

ER_24.

ModMed "encourage[d] [Ms. Sandler] to return all paperwork no later than Tuesday, September 8, 2015," and warned that "[r]eturning your paperwork after September 8, 2015 may delay your anticipated start date." *Id.* ModMed further warned that "[i]n any event, this offer of employment will terminate if it is not accepted, signed and returned by no later than September 10, 2015." *Id.* The Offer Letter enclosed a copy of the "At-Will Employment, Confidential Information, Invention Assignment and Arbitration Agreement" ("Employment Agreement"). SER_66; ER_21-41. The Employment Agreement is a 15-page, single-spaced document with fourteen different sections, including "13. ARBITRATION AND EQUITABLE RELIEF" (the "Arbitration Provision"), the relevant terms of which ModMed cited in its Opening Brief and included in its Excerpts of Record.

-4-

SER_11-14; ER_26-41. Though the Arbitration Provision references the JAMS Rules and provides JAMS's basic website address, the JAMS Rules were not included with the Employment Agreement. ER_26-41.

Although Ms. Sandler recalls receiving the Offer Letter and Employment Agreement either via email or via ModMed's Human Resources software platform, she does not recall the date she received these documents and has been unable to find any independent record establishing the date she received these documents. SER_66. ModMed's Adobe Acrobat Sign Audit Report shows that the Offer Letter was created and sent by ModMed to Ms. Sandler at her gMed email address on September 8, 2015. ER_44-45. Although Ms. Sandler recalls e-signing the Offer Letter and Employment Agreement, she does not recall the date she e-signed these documents and has been unable to find any independent record establishing the date she e-signed these documents. SER_66. ModMed's Adobe Acrobat Sign Audit Report shows Ms. Sandler e-signed the Offer Letter and Employment Agreement on September 8, 2015. ER-45.

Prior to e-signing, no one from ModMed explained the terms of the Offer Letter and Employment Agreement to Ms. Sandler, and she was not told that the terms of the Offer Letter and Employment Agreement were negotiable. SER_66. Instead, the Offer Letter and Employment Agreement were presented to Ms. Sandler on a take-it-or-leave-it basis. *Id.* Ms. Sandler did not consult with an

attorney regarding the terms of the Offer Letter and Employment Agreement prior to e-signing. *Id.*

At the time, Ms. Sandler had invested two years into establishing and growing gMed's West Territory, had earned commissions that were scheduled to be paid throughout the coming months based on her sales compensation plan, and had numerous large deals that she was trying to close by year-end. SER_66-67. If Ms. Sandler did not continue her employment with ModMed, she would have lost out on significant commissions that were to be paid in 2016. SER_67. By accepting ModMed's take-it-or-leave-it offer, Ms. Sandler was promised she would maintain the same West Territory, would continue to focus on gastroenterology, and would continue to sell the same gMed products she had been selling. *Id.* As such, Ms. Sandler felt she had no choice but to accept ModMed's Offer Letter and Employment Agreement to ensure she would receive her earned commissions and continue to profit from her two-year investment into the West Territory. *Id.*

### C. The Employment Agreement Contains Numerous One-Sided Provisions Reserving Court Action for ModMed, but Not Ms. Sandler

Throughout the fourteen sections of ModMed's Employment Agreement, there are hidden carve-outs for claims that only ModMed has the right to bring:

- "Confidentiality," which states that any "unauthorized use or disclosure of Company Confidential Information" or "Associated Third Party Confidential

-6-

Information" "during my employment may lead to disciplinary action, up to and including immediate termination and *legal action by the Company*," which obligations "shall continue after termination of my employment." ER_28 (emphasis added).

- "Non-Interference with Company Employees," under which Ms. Sandler was required to "agree that during my employment and for a period of twelve (12) months immediately following the termination of my relationship with the Company … I will refrain from initiating contact with any then current employees of Company to leave the employ or service of Company." ER_32. This section provides "*that Company may seek legal relief including an injunction, declaratory relief, specific performance, and/or substantial damages against me* as a result of" any prohibited "initial contact," which "shall be deemed by Company to be a wrongful act which may give rise to liability for me." ER_32-33 (emphasis added).

- "Breach of Non-Interference Covenants," which provides that in the event of any breach of the "Confidentiality" or "Non-Interference with Company Employees' provisions, "I agree that such a breach would cause irreparable injury to the Company, and that *if the Company shall bring legal proceedings against me* to enforce any covenants or promises, *the Company shall be entitled to seek all available civil remedies, at law or in equity,*

-7-

*including without limitation, an order of specific performance, an injunction without posting a bond, monetary damages, attorneys' fees and costs*."

ER_34 (emphasis added).

Thereafter, the Arbitration Provision initially states that ModMed "promise[d] to arbitrate all employment-related disputes … including but not limited to, misuse of confidential information or interference with Company business and workforce, unfair competition or matters involving inventions."

ER_35. The Arbitration Provision then asserts:

> *Except as provided by* the Act and *this Agreement*, arbitration shall be the sole, exclusive, and final remedy for any dispute between me and the Company. Accordingly, except as provided for by the Act and this Agreement, neither I nor the Company will be permitted to pursue court action regarding claims that are subject to arbitration.

*Id.* (emphasis added).

Then, in line with the "except[ions]" ModMed allowed itself, the Arbitration Provision provides the following carve-out from arbitration:

> *Notwithstanding any provision in this Agreement to the contrary, nothing, including in this Section 13, shall prevent the Company from applying to a court of competent jurisdiction to obtain equitable or injunctive relief such as an application for a temporary/preliminary or permanent injunction for breach of the restrictive covenants contained in this Agreement.*

*Id.* (emphasis added).

-8-

**D. After Ms. Sandler Filed Her Complaint in Court, ModMed Moved to Compel Her to Arbitration; The District Court Denied ModMed's Motion**

On May 8, 2024, Ms. Sandler filed her Complaint in this Court. ER_115; *see also* SER_43. In the Complaint, Ms. Sandler alleges she became employed by ModMed as a Regional Sales Manager on October 1, 2015. ER_72. Through her employment, Ms. Sandler excelled and was a top performer for ModMed year after year. ER_73. In 2022, Ms. Sandler transferred to a new division, under a new, younger manager, who micromanaged and unfairly criticized Ms. Sandler, and made inappropriate comments about her age, mental disabilities, and need for time off to care for her ailing mother. ER_74; ER_75-79. The discriminatory treatment exacerbated Ms. Sandler's underlying mental disabilities and required her to take medical leave. ER_77; ER_79-80. Thereafter, Ms. Sandler sought to return to work with a reasonable accommodation, which ModMed denied without justification and without engaging in an interactive process to determine whether there was any other accommodation it could provide. ER_80-83. Instead, ModMed wrongfully terminated Ms. Sandler's employment on August 23, 2023. ER_82-83.

Based on these alleged facts, Ms. Sandler's Complaint asserted claims for age and disability discrimination, failure to provide reasonable accommodations, failure to engage in the interactive process, retaliation for requesting reasonable accommodations, and failure to prevent discrimination and retaliation under the

California Fair Employment and Housing Act, retaliation under the California Family Rights Act, and interference under the Family and Medical Leave Act. ER_69.

Thereafter, on June 24, 2024, ModMed filed a Motion to Compel Arbitration and Stay Action Pending Arbitration. SER_3-31. On October 9, 2024, the District Court denied ModMed's Motion ("Order"). ER_3-18. The District Court first declined to enforce the Arbitration Provision's delegation clause because it found the Employment Agreement "lacks the 'clear and unmistakable evidence' required to override the presumption of judicial review of gateway arbitrability," the "Court must therefore decide the arbitrability of the Agreement." ER_9. As such, the District Court determined whether the Agreement was unconscionable.

The District Court then found that "Plaintiff has demonstrated a low degree of unconscionability based on the Arbitration Provision's adhesive nature and oppression." ER_12. The Court, however, also found that the Arbitration Provision was substantively unconscionable based on the (1) one-sided nature of the claims subject to arbitration (ER_11-14), (2) one-sided nature of parties subject to arbitration (ER_14-15), (3) lack of mutuality as to jury waiver (ER_15-16); and (4) the agreement's indefinite duration (ER_16). Accordingly, the District Court found that "the offending provisions of the Employment Agreement are not severable and the Arbitration Provision is unenforceable." ER_18. ModMed thereafter appealed.

## IV.  SUMMARY OF THE ARGUMENT

The District Court properly relied on the presumption of judicial review for the gateway issue of arbitrability. Conflicting language in the delegation and severability clauses created ambiguities precluding the required finding of clear and unmistakable intent to delegate the issue of arbitrability.

The District Court correctly found the Arbitration Provision was procedurally and substantively unconscionable. In weighing the sliding scale of unconscionability, the oppressive and "adhesive nature" of the Employment Agreement provided at least the low level of procedural unconscionability required, which was counterbalanced by the required higher level of substantive unconscionability due to its pervasive lack of mutuality including in: (1) the parties subject to arbitration, (2) the jury trial waiver, (3) the indefinite duration of the Arbitration Provision, and (4) the one-sided claim coverage.

The District Court did not abuse its discretion when it refused to sever the unconscionable provisions. Unconscionability permeated the Employment Agreement, and no single provision's absence would change that result.

## V.  STANDARD OF REVIEW

This Court reviews decisions about the arbitrability of claims and the denial of a motion to compel arbitration de novo. *Momot v. Mastro*, 652 F.3d 982, 986 (9th Cir. 2011); *Suski v. Coinbase, Inc.*, 55 F.4th 1227, 1229 (9th Cir. 2022)

-11-

("*Suski*"). "'The interpretation and meaning of contract provisions'" are also reviewed de novo. *Lee v. Intelius Inc.*, 737 F.3d 1254, 1258 (9th Cir. 2013) (citation omitted). Any findings of fact underlying the District Court's decision are reviewed for clear error. *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1267-68 (9th Cir. 2006) (en banc).

The District Court's decision to invalidate the Arbitration Provision rather than sever its unconscionable portions is reviewed for an abuse of discretion. *Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.,* 622 F.3d 996, 1006 (9th Cir. 2010). This Court reviews the District Court's ruling—not its reasoning—and the decision below may be affirmed on any ground supported by the record. *See Cassirer v. Thyssen-Bornemisza Collection Found.*, 862 F.3d 951, 974 (9th Cir. 2017); *see also Jewel Cos. v. Pay Less Drug Stores Nw., Inc.*, 741 F.2d 1555, 1564-65 (9th Cir. 1984) ("if the district court's order can be sustained on any ground supported by the record that was before the district court at the time of the ruling, [this Court is] obliged to affirm the district court").

## VI.   ARGUMENT

"The Federal Arbitration Act (FAA) 'reflects the fundamental principle that arbitration is a matter of contract'" and "not coercion." *Coinbase, Inc.*, 602 U.S. at 147 ("*Coinbase*") (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)); *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010)

(quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)). As such, "the central or 'primary' purpose of the FAA is to ensure that 'private agreements to arbitrate are enforced according to their terms.'" *Stolt-Nielsen S.A.*, 559 U.S. at 682 (quoting *Volt Info. Scis. Inc.*, 489 U.S. at 479). Like other contracts, arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. §2.

"[A]rbitration is simply … a way to resolve those disputes, *but only those disputes*, that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) (emphasis added). "Consequently, the first question in any arbitration dispute must be: What have these parties agreed to?" *Coinbase*, 602 U.S. at 148. Such agreements can include an agreement "to send the merits of a dispute to an arbitrator," but also an agreement that "'an arbitrator, rather than a court, will resolve threshold arbitrability questions.'" *Id.* (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019)). "Whether enforcing an agreement to arbitrate or construing an arbitration clause, courts and arbitrators must 'give effect to the contractual rights and expectations of the parties.'" *Stolt-Nielsen S.A.*, 559 U.S. at 682 (quoting *Volt Info. Scis. Inc.*, 489 U.S. at 479).

-13-

The party seeking to compel arbitration "has the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). "When determining whether parties have agreed to submit to arbitration, courts apply state-law principles of contract formation and interpretation." *Suski*, 55 F.4th at 1230. However, "[w]hen deciding whether the parties agreed to arbitrate … arbitrability," there is an important "qualification," discussed below. *First Options of Chicago, Inc.*, 514 U.S. at 944.

## A. The District Court Properly Ruled on the Gateway Issue of Arbitrability

ModMed's first argument on appeal is that the District Court erred when it refused to enforce the Delegation Clause. *See* Appellant's Br. 10, 12-17. But, as explained below, the District Court properly relied on the presumption of judicial review for the gateway issue of arbitrability because conflicting language in the Delegation and Severability clauses created ambiguities precluding the required finding of clear and unmistakable intent to delegate arbitrability.

### 1. Delegation of Arbitrability Requires Clear and Unmistakable Intent with Ambiguity to be Construed in Favor of Judicial Determination

As the Supreme Court has recognized, "who – court or arbitrator – has the primary authority to decide whether a party has agreed to arbitrate can make a critical difference to a party resisting arbitration." *First Options of Chicago, Inc.*,

514 U.S. at 942. "Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, [internal citations omitted], so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter." *Id.* at 943. But, unlike the arbitrability of claims in general, this question is "'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 649 (1986)). As such, "[i]n 'circumstance[s] where contracting parties would likely have expected a court to have decided the gateway matter,' [the Court] assume[s] that is what they agreed to." *Rent-A-Center, W., Inc.*, 561 U.S. at 69, fn. 1 (quoting *Howsam*, 537 U.S. at 83).

Accordingly, the clear and unmistakable requirement provides a "heightened standard" of proof that acknowledges "the 'who (primarily) should decide arbitrability' question -- is rather arcane" and that "[a] party often might not focus upon that question or upon the significance of having arbitrators decide the scope of their own powers." *Rent-A-Center, W. Inc.*, 561 U.S. at 69, fn. 1; *First Options of Chicago, Inc.*, 514 U.S. at 945. "It pertains to the parties' *manifestation of intent*, not the agreement's *validity*." *Rent-A-Center, W., Inc.*, 561 U.S. at 69, fn. 1. Such intent can be shown by "a course of conduct demonstrating assent . . . or . . . an

-15-

express agreement." *Momot*, 652 F.3d at 988 (quoting *Rent-A-Center, W., Inc.*, 561 U.S. at 79-80). But, in contrast to the general rule that ambiguities in arbitration agreements be resolved in favor of arbitration, the clear and unmistakable standard requires that silence or ambiguity as to the delegation of arbitrability be construed in favor of court adjudication. *First Options of Chicago, Inc.*, 514 U.S. at 945-47. "In other words, there is a presumption that courts will decide which issues are arbitrable; the federal policy in favor of arbitration does not extend to deciding questions of arbitrability." *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013).

Indeed, "given the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration, one can understand why courts might hesitate to interpret silence or ambiguity on the 'who should decide arbitrability' point as giving the arbitrators that power, for doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide." *First Options of Chicago, Inc.*, 514 U.S. at 945.

### 2. The Incorporated Delegation Clause Conflicts with the Express Severability Clause and Creates Ambiguity as to the Parties' Intent

In California, "[a] contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting." *Johnson v.*

*Walmart Inc.*, 57 F.4th 677, 682 (9th Cir. 2023) (quoting Cal. Civ. Code §1636). "To determine the reach of a particular agreement, [the Court] must look to its express terms." *Id.* (quoting *Walsh v. Arizona Logistics, Inc.*, 998 F.3d 393, 396 (9th Cir. 2021)). Further, "under California law, a contract must be 'interpreted as a whole.'" *Id.* (quoting *Int'l Bhd. of Teamsters v. NASA Servs., Inc.*, 957 F.3d 1038, 1042 (9th Cir. 2020) (reversing an order compelling arbitration where the court failed to interpret an arbitration clause in the context of the contract as a whole)).

"[T]he best indicator of the parties' intent in a written contract is the words they chose for the agreement." *Nelson v. Dual Diagnosis Treatment Ctr., Inc.*, 77 Cal. App. 5th 643, 654 (2022). "California courts interpret contracts containing arbitration provisions by application of the plain meaning rule—words of a contract are given their usual and ordinary meaning." *Johnson*, 57 F.4th at 682. If "a contract is capable of two different reasonable interpretations, the contract is ambiguous." *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1285 (9th Cir. 2009) (quoting *Oceanside 84, Ltd. v. Fid. Fed. Bank*, 56 Cal. App. 4th 1441, 1448 (1997)). Here, the Employment Agreement containing the Arbitration Provision contains conflicting language regarding arbitrability, capable of two different reasonable interpretations, and as such, is ambiguous.

First, while the Arbitration Provision expressly specifies the types of disputes subject to arbitration ("all *employment-related* disputes"; "any and all

-17-

controversies, claims, or disputes with anyone … *arising out of, relating to, or resulting from my employment* with the Company or the *termination of my employment* with the Company, including any *breach of this Agreement*"; "any statutory claims under local, state, or federal law, including, but not limited to, claims under [specifically listing various state and federal employment-related statutes]"; and "misuse of confidential information or interference with Company business and workforce, unfair competition or matters involving inventions")", it is glaringly silent on the gateway issue of arbitrability and makes no reference to disputes concerning the existence, validity, interpretation, or enforceability of the Arbitration Provision. ER_34-35 at §13.A (emphasis added).

Instead, within the Arbitration Provision's "Procedure" clause, it states that "any arbitration will be administered by [JAMS] pursuant to its Employment Arbitration Rules & Procedures (the "JAMS Rules") and can be found at www.jamsadr.com." ER_35 at §13.B. The District Court ruled that this sole reference to the JAMS Rules provided clear and unmistakable evidence of the parties' agreement to arbitrate arbitrability pursuant to JAMS Rule 11(b), which states that, "disputes over the formation, existence, *validity*, interpretation or scope of the agreement under which Arbitration is sought … *shall be submitted to and ruled on by the Arbitrator*." ER_7-8; ER_55 (emphasis added). Thus, while the face of the Arbitration Provision contains no reference to arbitrability disputes (or

existence, validity, interpretation, or enforceability of the Arbitration Provision), the Delegation Clause was incorporated in by reference to the JAMS Rules.

The Employment Agreement does, however, expressly reference validity and enforceability in its "Severability" clause, which states, "*If a court* or other body of competent jurisdiction finds … any provision of this Agreement, or portion thereof, to be *invalid or unenforceable*, such provision will be enforced to the maximum extent possible so as to effect the intent of the Parties …" ER_36-37 at §14.E (emphasis added). Inclusion of both the Delegation Clause (by incorporation) and the Severability Clause (express within the Employment Agreement) causes conflict as to the "who should decide arbitrability" question. On one hand, the Delegation Clause requires arbitrability disputes regarding validity to be decided by the arbitrator, while on the other hand, the Severability Clause contemplates that a court may also decide arbitrability disputes including validity and enforceability. This conflict creates ambiguity which, as explained below, precludes a finding of clear and unmistakable intent to delegate arbitrability.

3.  **California Precedent is Clear – Conflicting Delegation and Severability Clauses Preclude the Required Finding of Clear and Unmistakable Intent to Delegate Arbitrability**

The District Court ruled that ModMed failed to show "the 'clear and unmistakable evidence' required to override the presumption of judicial review of gateway arbitrability" due to the conflict between the Delegation Clause and

-19-

Severability Clause. ER_9. The District Court relied on California precedent, *Dennison v. Rosland Cap. LLC*, 47 Cal. App. 5th 204 (2020), which held, "[w]here … a contract includes a severability clause stating a court of competent jurisdiction may excise an unconscionable provision, there is no clear and unmistakable delegation to the arbitrator to decide if the arbitration agreement is unconscionable." *Dennison*, 47 Cal. App. 5th at 209-10. Instead of attempting to distinguish *Dennison* (which ModMed cannot do), it simply argues on appeal that the District Court erroneously relied on "outdated state court precedent." *See* Appellant's Br. 13. But numerous pre- and post-*Dennison* cases, all of which are still good law in California, reinforce the District Court's decision.

Prior to *Dennison*, several California appellate decisions declined to enforce seemingly express delegation clauses because they were rendered ambiguous in the face of a contradictory provision. In *Baker v. Osborne Development Corp.*, 159 Cal. App. 4th 884 (2008), a home warranty agreement was "inconsistent" on arbitrability. *Id.* at 891. On one hand, the delegation clause stated, "*interpretation or the enforceability* of this arbitration agreement, including … its *revocability or voidability* … shall be decided by the arbitrator." *Id.* (emphasis added). On the other hand, a severability clause stated, "in the event that 'any provision of this arbitration agreement shall be determined by the arbitrator or *by any court* to be unenforceable …'" *Id.* Because of this inconsistency, the court concluded, "the

arbitration agreement did not 'clearly and unmistakably' reserve to the arbitrator the issue of whether the arbitration agreement was enforceable." *Id.* at 894.

In *Parada v. Superior Court*, 176 Cal. App. 4th 1554 (2009), similarly conflicting language in an account agreement precluded delegation of arbitrability. *Id.* at 1566. The delegation clause stated that, "*enforcement, interpretation or validity* of this Agreement, including … this agreement to arbitrate, *shall be submitted to final and binding arbitration*." *Id.* at 1561. Contradictorily, the severability clause stated, "'[i]n the event any provision of this Agreement shall be determined *by a trier of fact of competent jurisdiction to be unenforceable* …'" *Id.* at 1566. The court determined that "[u]se of the term 'trier of fact of competent jurisdiction' instead of 'arbitration panel' … suggests the trial court also may find a provision, including the arbitration provision, unenforceable." *Id.* As such, arbitrability was not "'clearly and unmistakably' reserve[d] … to the arbitration panel." *Id.* (quoting *Baker*, 159 Cal. App. 4th at 894).

In *Hartley v. Superior Court*, 196 Cal. App. 4th 1249 (2011), "the contract language conflict[ed] on the issue of who is to decide arbitrability and create[d] ambiguity." *Id.* at 1256. While the purchase agreement contained an express delegation clause and incorporated the JAMS Rules, it also contained provisions allowing "a party … to obtain provisional, injunctive, or other *equitable relief from a court of competent jurisdiction*" and for severability "[i]n the event that any

provision … shall be determined by a *trier of fact of competent jurisdiction to be unenforceable.*" *Id.* at 1257. The court found ambiguities because the agreement allowed a "trier of fact of competent jurisdiction" rather than an "arbitrator" to decide equitable matters (including unconscionability) and severability. *Id.* at 1258. As such, it concluded "'the court and not the arbitrator should decide arbitrability so as not to force unwilling parties to arbitrate a matter they reasonably thought a judge, not an arbitrator, would decide.'" *Id.* (quoting *Dream Theater, Inc. v. Dream Theater*, 124 Cal. App. 4th 547, 552 (2004)).

In *Dennison*, a customer agreement contained a delegation clause that required the customer "to arbitrate all controversies … *including the determination of the scope or applicability of this agreement to arbitrate*." *Dennison*, 47 Cal. App. 5th at 208. It also contained a severability clause which stated, "*If any provision of this Agreement is held by a court of competent jurisdiction to be void, invalid, or unenforceable*, then that provision will be enforced to the maximum extent permissible …" *Id.* at 209. Citing *Baker*, *Parada*, and *Hartley*, the *Dennison* court held that because of the "severability clause stating a court of competent jurisdiction *may* excise an unconscionable provision, there is no clear and unmistakable delegation." *Id.* at 209-10. As such, "it was for the court, and not the arbitrator, to determine arbitrability." *Id.* at 210.

Post-*Dennison* cases reinforce California's long history of finding that conflicting delegation and severability clauses negate clear and unmistakable intent to delegate arbitrability. In *Najarro v. Superior Court*, 70 Cal. App. 5th 871 (2021), an employment-related arbitration agreement did "not contain a valid delegation clause because its terms [did] not clearly and unmistakably provide that *only* the arbitrator may decide enforceability." *Id*. at 879 (emphasis added). While the delegation clause stated, "the *arbitrator shall have the exclusive power to resolve any dispute relating to* the interpretation, applicability, *enforceability* …," the severability clause provided, "if the arbitrator *or any judge of competent jurisdiction* determines that any provision of the JAMS Rules or this [a]greement is illegal, *invalid, or unenforceable* …" *Id*. at 877-78. As such, "the delegation clause [did] not meet the heightened standard necessary for enforcement." *Id*. at 880.

Finally, in *Jack v. Ring LLC*, 91 Cal. App. 5th 1186 (2023), the court concluded that there was no clear and unmistakable delegation to the arbitrator where the contract included both a delegation clause, stating that the arbitrator "shall have exclusive authority to resolve all disputes," and a "poison pill," providing that "'a court' may decide the enforceability" of a provision requiring arbitration be conducted on an individual basis. *Id*. at 1199 (also collecting cases regarding the unenforceability of delegation clauses that conflict with severability clauses).

-23-

Pre- and post-*Dennison* cases all remain good law and have been approvingly cited by several district courts in similarly declining to enforce delegation clauses when they conflict with severability clauses and cause ambiguity. *See, e.g., Hageman v. Hyundai Motor Am.*, No. 8:23-cv-01045-HDV-KES, 2024 U.S. Dist. LEXIS 236456, *11-13 (C.D. Cal. Dec. 10, 2024) (citing *Baker* and *Parada*); *Zuckerman v. Charter Commc'ns, LLC*, No. 24-cv-128-WQH-BJC, 2024 U.S. Dist. LEXIS 213337, *18-22 (S.D. Cal. Nov. 22, 2024) (citing *Jack*); and *Durruthy v. Charter Commc'ns, LLC*, No. 20-CV-1374-W-MSB, 2020 U.S. Dist. LEXIS 219894, at *5-8 (S.D. Cal. Nov. 23, 2020 (citing *Dennison*).

Finally, though ModMed does not raise the argument here, it argued in its Reply below that "other body of competent jurisdiction" was *intended* for an "arbitrator or panel of arbitrators to decide the issue," and that "court" was only retained "because ModMed reserved the right to bring disputes over breaches of confidentiality and solicitation in court."[1] SER_70-72. The District Court rightfully ruled that "ModMed's intentions were not written into the Arbitration Provision," and as such, failed to meet the clear and unmistakable standard for delegation. ER_9.

---

[1] As explained below, *only* ModMed retained the right to bring certain claims in court, including for "equitable or injunctive relief such as an application for a temporary/preliminary or permanent injunction for breach of the restrictive covenants contained in this Agreement." ER_35 at §13.C. There are no such carve-outs for Ms. Sandler.

Because the Employment Agreement contains a "poison pill" – a Severability Clause (providing that a court might decide validity and enforceability) that conflicts with the Delegation Clause (providing that an arbitrator shall decide arbitrability issues such as validity), the terms do not clearly and unmistakably provide that *only* an arbitrator may decide enforceability. As such, this Court should affirm the District Court's reliance on *Dennison* and its determination of the gateway issue of arbitrability.

### 4. *Mohamed v. Uber Technologies* is Distinguishable and Does Not Resolve the Ambiguity Caused by Conflicting Severability Clauses

ModMed argues the District Court should have instead relied on the pre-*Dennison* case, *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201 (9th Cir. 2016), despite ModMed failing to cite this case in its Motion or Reply below. SER_3-31, 69-77. Regardless, *Mohamed* is distinguishable and does not relieve ModMed of the ambiguity caused by the conflicting Delegation and Severability Clauses.

In *Mohamed*, the plaintiff-appellees (Uber drivers) signed various employment-related agreements which were governed by California law. *Mohamed*, 848 F.3d at 1206-07. The agreements included an arbitration provision but also provided drivers with the opportunity to opt out of arbitration. *Id.* The agreements contained a delegation clause which stated, "this Arbitration Provision is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law" and included "disputes arising out of or relating to interpretation

or application of this Arbitration Provision, including the *enforceability, revocability or validity ….*" *Id.* at 1207-08 (emphasis added). The agreements also contained class action waivers, which were specifically carved out from the delegation clause. *Id.* at 1208. Separately, the agreements contained a venue clause that stated, "any disputes … arising out of or in connection with [the agreements] shall be subject to the exclusive jurisdiction of the state and federal courts" in San Francisco. *Id.* at 1209.

This Court held the delegation clause in *Mohamed* was clear and unmistakable and that any conflict with the venue clause was "artificial." *Mohamed*, 848 F.3d at 1209. Citing *Dream Theater*, the Court observed that "no matter how broad the arbitration clause, it may be necessary to file an action in court." *Dream Theater, Inc.*, 124 Cal. App. 4th at 556. Indeed, the *Mohamed* arbitration provision specifically contemplated disputes that would be filed in court due to the arbitration opt-out and the class action waivers which were carved out of the delegation clause. *Id.* at 1206-08. Accordingly, the venue clause only identified *where* "any other claims that were not covered by the arbitration agreement" should be filed. *Id.* at 1209. It did not "conflict with or undermine" *who* would hear arbitrability disputes regarding "enforceability, revocability or validity" (except as to class action waivers, which were carved out of the delegation clause). *Id.*

Likewise, in *Dream Theater*, the court held that a venue clause and delegation clause did not conflict. *Dream Theater, Inc.*, 124 Cal. App. 4th at 555. Here, the parties executed an asset purchase agreement that incorporated a delegation clause by reference to the arbitral rules and contained a venue clause that specified that "any action arising out of the agreements may be brought in any state or federal court in Los Angeles." *Id*. at 556. The court found that the venue clause did "not expressly limit the scope of the arbitration clause, and enforcement of the arbitration clause [did] not … nullify" the venue clause because "[n]o matter how broad the arbitration clause, it may be necessary to file an action in court." *Id.* The court gave examples such as "an action in court to enforce an arbitration agreement, or to obtain a judgment enforcing an arbitration award" or for a "preliminary injunction, appointment of a receiver, or a writ of attachment." *Id.* In other words, mere reference to the situs of an action falling outside of the arbitration provision did not conflict with the language determining who – court or arbitrator – should hear disputes regarding enforceability of the arbitration agreement.

The same cannot be said for a severability clause, like the one at issue here, that contains express language regarding who is to resolve enforceability disputes that is in direct conflict with the express language of the delegation clause regarding the same. *Mohamed* should not be applied to invalidate over a decade's

-27-

worth of California Court of Appeals cases outlined above that clearly and succinctly hold that, "where one contractual provision indicates that the enforceability of an arbitration provision is to be decided by the arbitrator, but another provision indicates that [a] *court* might also find provisions in the contract unenforceable, there is no clear and unmistakable delegation of authority to the arbitrator." *Jack*, 91 Cal. App. 5th at 1197 (quoting *Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 792 (2012)).

### 5. The Court Should Not Rely on District Court Cases in the Face of Relevant California Appellate Decisions

ModMed further urges the Court to follow the district court cases *McLellan v. Fitbit, Inc.*, No. 3:16-cv-00036-JD, 2017 U.S. Dist. LEXIS 168370 (N.D. Cal. Oct. 11, 2017), *MegaCorp Logistics, LLC v. Turvo, Inc.*, No. 18-cv-01240-EMC, 2018 U.S. Dist. LEXIS 127227 (N.D. Cal. July 30, 2018), *Taylor v. Shutterfly, Inc.*, No. 18-cv-00266-BLF, 2018 U.S. Dist. LEXIS 154925 (N.D. Cal. Sept. 11, 2018), and *Bell v. Redfin Corp.*, No. 20-CV-2264-AJB-AGS, 2021 U.S. Dist. LEXIS 226739 (S.D. Cal. Aug. 12, 2021), none of which ModMed cited in its Motion or Reply below. SER_3-31, 69-77.

In any event, "when (1) a federal court is required to apply state law, and (2) there is no relevant precedent from the state's highest court, but (3) there *is* relevant precedent from the state's intermediate appellate court, the federal court must follow the state intermediate appellate court decision unless the federal court

finds convincing evidence that the state's supreme court likely would not follow it." *Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993, 994 (9th Cir. 2007). As such, the Court should follow the California appellate cases cited above, which are all directly on point. Unlike these appellate cases, the district court cases cited by ModMed fail to undertake the same extensive analysis as to why conflicting language regarding enforceability in delegation and severability clauses create ambiguities that preclude the heightened requirement of clear and unmistakable intent. Furthermore, these district court cases are distinguishable.

In *McLellan*, a terms of service agreement contained an arbitration provision with an opt-out procedure, incorporated arbitral rules with a delegation clause, and included a severability clause that referenced "a court of competent jurisdiction." *Id.* at *11. Because the agreement contemplated disputes lying outside the scope of the arbitration provision due to the arbitration opt-out and carve-outs for *both* parties to bring lawsuits for injunctive relief, the District Court determined the severability clause was not inconsistent with the parties' intent to delegate. *Id.* at 12-13.

But, unlike *McLellan*, the Employment Agreement and Arbitration Provision here do not carve-out any claims that Ms. Sandler might bring in court *except* to determine whether any provision is "invalid or unenforceable," as stated within the Severability Clause. ER_27-37. In fact, the *only* claims carved out of the

Arbitration Provision are solely for ModMed – *e.g.*, "legal action" by ModMed for Ms. Sandler's "unauthorized use or disclosure" of confidential information (ER_28 at §2.B); "legal action" by ModMed for Ms. Sandler's "unauthorized use or disclosure" of third-party confidential information (ER_29 at §2.D); "legal relief including injunction, declaratory relief, specific performance, and/or substantial damages" to ModMed for Ms. Sandler's violation of the non-interference restrictive covenant (ER_32 at §8); "legal proceedings … to seek all available civil remedies, at law or in equity" by ModMed for Ms. Sandler's breach of any restrictive covenants (ER_34 at §12); and the express carve out within the Arbitration Provision that, "Notwithstanding any provision in this Agreement to the contrary, nothing, including this Section 13 [Arbitration Provision], shall prevent the Company from applying to a court of competent jurisdiction to obtain equitable or injunctive relief such as an application for a temporary/preliminary or permanent injunction for breach of the restrictive covenants contained in this Agreement" (ER_35 at §13.C).

As such, the conflicting language between the Delegation Clause and Severability Clause remain ambiguous as to Ms. Sandler since there are no carve-outs for claims she might be entitled to bring in court *except* as stated within the Severability Clause. And arguably, the one-sided carve-outs create even more ambiguity as ModMed reserved for itself the right to go to court to obtain

-30-

"equitable … relief," and "[a] claim that a contract is unenforceable on the ground of unconscionability is an equitable matter." *Hartley*, 196 Cal. App. 4th at 1257. Such language has also been held to render an agreement ambiguous, negating clear and unmistakable intent to delegate arbitrability. *Id.* at 1258 ("one paragraph of the arbitration clause here authorizes the court to decide all equitable issues, notwithstanding another paragraph that authorizes the arbitrator to decide all disputes").

In *MegaCorp Logistics* and *Taylor*, the relevant agreements contained arbitration provisions with express delegation clauses and severability clauses that referenced "a court of competent jurisdiction." *MegaCorp Logistics, LLC*, 2018 U.S. Dist. LEXIS 127227 at *14-16; *Taylor*, 2018 U.S. Dist. LEXIS 154925 at *11-20. Without any analysis of California precedent, the District Court improperly extended *Mohamed* to severability clauses, finding (opposite to California precedent) that "reference to a 'court of competent jurisdiction' in one provision … does not render the express delegation clause of the Arbitration Agreement ambiguous." *Id.* at *16. Similarly, in *Bell*, the plaintiff signed employment-related arbitration agreements which contained express delegation clauses and severability clauses referencing "any court or arbitrator." *Bell*, 2021 U.S. Dist. LEXIS 226739 at *2-4, 8-9. Though the District Court found clear and unmistakable intent to delegate, it distinguished the California decisions *Parada* and *Hartley* which

-31-

involved "severability clauses suggesting only a court must find the agreement unenforceable." *Id.* at \*10. But unlike *Bell*, the Severability Clause here does not reference the arbitrator.

These decisions should not be followed in light of the relevant precedent from the California Court of Appeal and the ambiguities particular to Ms. Sandler, as described above.

## B. The District Court Properly Found the Arbitration Provision is Unconscionable and Unenforceable

Because the District Court properly determined the Employment Agreement "lack[ed] the 'clear and unmistakable evidence' required to override the presumption of judicial review of gateway arbitrability," it then moved on to determine that the Arbitration Provision was both procedurally and substantively unconscionable, and therefore, unenforceable. ER_9-16.

In ModMed's second argument on appeal, it accepts the District Court's finding of procedural unconscionability due to the oppressive and "adhesive nature" of the Employment Agreement. *See* Appellant's Br. 18; ER_9-12. Instead, ModMed argues the District Court erred in its finding of substantive unconscionability because it relied on state law precedent that considered an allegedly "far more overreaching" arbitration clause than the one at issue. *See* Appellant's Br. 10, 12-17. But, as explained below, the District Court properly determined that ModMed's Arbitration Provision is substantively unconscionable

-32-

due to its pervasive lack of mutuality including in: (1) the parties subject to arbitration, (2) the jury trial waiver, (3) duration, and (4) one-sided claim coverage. ER_12-14. As such, the District Court's ruling should be affirmed.

### 1. ModMed's Arbitration Provision is Subject to All Defenses that Apply to Contracts Generally Under California Law

"Federal law favoring arbitration is not a license to tilt the arbitration process in favor of the party with more bargaining power." *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 927 (9th Cir. 2013). Like other contracts, arbitration agreements "may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Rent-A-Center, W., Inc.*, 561 U.S. at 67 (quoting *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). The substantive law of California controls here because ModMed employed Ms. Sandler in California, and the Employment Agreement states that is governed by California law. ER_36 at §14.A.

"Under California law, a contract must be both procedurally and substantively unconscionable to be rendered invalid." *Chavarria*, 733 F.3d at 922. (citing *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000)). "To establish this defense, the party opposing arbitration must demonstrate procedural and substantive unconscionability, but both 'need not be present in the same degree.' Instead, a sliding scale exists such that 'the more substantively oppressive the contract term, the less evidence of procedural unconscionability is

required to come to the conclusion that the term is unenforceable, and vice versa.'" *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1000 (9th Cir. 2021) (quoting *Sanchez v. Valencia Holding Co.*, 61 Cal. 4th 899, 910 (2015)). "The whole of a contract is to be taken together, so as to give effect to every part," with "each clause helping to interpret the other." Cal. Civ. Code §1641.

"The substantive element looks to the actual terms of the parties' agreement to ensure that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as overly harsh, unduly oppressive, so one-sided as to shock the conscience or unfairly one-sided." *Magno v. The Coll. Network, Inc.*, 1 Cal. App. 5th 277, 287-88 (2016) (internal quotation marks and alterations omitted). "[T]he paramount consideration in assessing conscionability is mutuality." *Abramson v. Juniper Networks, Inc.*, 115 Cal. App. 4th 638, 657 (2004).

"Agreements to arbitrate must contain at least 'a modicum of bilaterality' to avoid unconscionability." *Id.* (quoting *Armendariz*, 24 Cal. 4th at 119). "[A]n arbitration agreement imposed in an adhesive context lacks basic fairness and mutuality if it requires one contracting party, but not the other, to arbitrate all claims arising out of the same transaction or occurrence or series of transactions or occurrences." *Armendariz*, 24 Cal. 4th at 120. "Courts have found one-sided employer-imposed arbitration provisions unconscionable where they provide that

employee claims will be arbitrated, but the employer retains the right to file a lawsuit in court for claims it initiates, or where only the types of claims likely to be brought by employees (wrongful termination, discrimination etc.) are made subject to arbitration." *Serafin v. Balco Props. Ltd., LLC*, 235 Cal. App. 4th 165, 181 (2015). ModMed's Arbitration Provision lacks the "modicum of bilaterality" required, and therefore, its unconscionability must be affirmed.

### 2. The District Court Correctly Held That the Scope of the Parties Subject to Arbitration Lacks Mutuality

The District Court properly found a lack of mutuality as to the parties subject to the Arbitration Provision. ER_14-15. ModMed claims the District Court, first, erred in its interpretation of the scope of the parties subject to the Arbitration Provision, and second, misapplied the recent California Court of Appeal case, *Cook v. University of Southern California*, 102 Cal. App. 5th 312 (2024). ModMed's arguments fall short.

First, the language of the ModMed's Employment Agreement is clear. At the outset, the Agreement defines the "Company" narrowly, as "Modernizing Medicine, Inc., its subsidiaries, affiliates, successors or assigns." ER_27. "Company" is then utilized throughout the Agreement without alteration to its scope. ER_27-37. As such, this narrow definition of "Company" applies within the Arbitration Provision, which describes, "[the *Company*'s] promise to arbitrate all

employment-related disputes" including "any disputes that the *Company* may have with [Ms. Sandler] …." ER_34 at §13.A (emphasis added).

Conversely, the Arbitration Provision requires Ms. Sandler to broadly arbitrate her claims against "*anyone* (including the *Company and any employee, officer, director, stockholder, or benefit plan of the company, in their capacity as such or otherwise*)." ER_34 at §13.A (emphasis added). This expansive scope of potential parties is not limited to ModMed's "related entities," as ModMed suggests. *See* Appellant's Br.19-20. Thus, the parties subject to arbitration clearly lacks mutuality – *i.e.* only the narrowly-defined Company is required to arbitrate claims against Ms. Sandler, while Ms. Sandler is required to arbitrate her claims against the limitless "anyone." *Id.* The District Court noted that "ModMed does not address this issue or attempt to justify this one sidedness." ER_15; SER_74-76. On appeal, ModMed similarly fails to justify this one sidedness and points to nothing within the Employment Agreement that requires a different interpretation of the plain meaning of these words.

ModMed then attempts to distinguish from *Cook* but conflates the *Cook* court's decision regarding the unconscionably broad scope of claims with the court's decision regarding the lack of mutuality as to the parties required to arbitrate. *See* Appellant's Br.19-20; *Cook*, 102 Cal. App. 5th at 321-25 as compared to 326-28. In *Cook*, the court upheld a finding that an arbitration agreement lacked

-36-

mutuality when it required plaintiff to arbitrate claims against defendant's "related entities" including "officers, trustees, administrators, employees or agents," but did not require defendant's "related entities" to do the same. *Cook*, 102 Cal. App. 5th at 326. "The plain language of the arbitration agreement thus provided a significant benefit to [defendant's] related entities without any reciprocal benefit to [plaintiff]." *Id.* at 328. For example, "[t]here is no question that it is more difficult for a party to enforce an arbitration agreement against a nonsignatory than it is for a nonsignatory to enforce an arbitration agreement against a party." *Id.* at 327. Because defendant provided "no justification for this one-sided treatment," the court concluded that the trial court did not err in finding the agreement substantively unconscionable for lack of mutuality. *Id.* at 328.

Here, the District Court found that ModMed's Employment Agreement "is similarly one-sided." ER_15. The District Court concluded that "without any showing of justification by ModMed, the Arbitration Provision is substantively unconscionable due to lack of mutuality." ER_15. This finding should be affirmed.

### 3. The District Court Correctly Held That the Jury Waiver Provision Lacks Mutuality

The District Court also properly found there is a lack of mutuality as to the jury waiver. ER_13-14. Indeed, the Arbitration Provision states in two separate subsections that *Ms. Sandler* waives "any right to a trial by jury," while it is silent as to whether this waiver applies to ModMed. ER_34, 36 at §13A and E. ModMed

has no justification, other than to weakly argue that this is not "a unilateral jury waiver," that the words "I agree" do not destroy the bilateral nature of the agreement, and that it was "were merely reminding" Ms. Sandler that "she will not have a right to a jury." *See* Appellant's Br. 22. But it is not so much the words ModMed chose to include, but the words it omitted that suggest an intentional lack of mutuality.

"[T]he best indicator of the parties' intent in a written contract is the words they chose for the agreement." *Nelson*, 77 Cal. App. 5th at 654. Here, the Arbitration Provision contains express language that *Ms. Sandler* is waiving her right to a jury trial but is silent as to ModMed. ER_34, 36 at §13A and E. ModMed's silence, especially in light of the one-sided claims ModMed carved-out for itself to bring in court (*e.g.*, for equitable, declaratory, and injunctive relief), speaks volumes. ER_35 at §13.C. As such, its silence could reasonably be interpreted to mean that it was *not* waiving its right to a jury trial. The District Court properly concluded that "this a one-sided provision without any showing of justification by ModMed, and as such, the Arbitration Provision is substantively unconscionable due to lack of mutuality." ER_14-15; SER_74-76. Accordingly, the District Court's finding should be affirmed.

### 4. The District Court Correctly Held the Infinite Duration of the Arbitration Provision Renders it Substantively Unconscionable

The District Court properly held that the Arbitration Provision is unconscionable due to its indefinite duration. ER_16. Among other problematic provisions, the Employment Agreement states: "[t]he rights and obligations of the parties to this Agreement will survive termination of my employment with the Company," and "[n]o modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in a writing signed by the President or CEO of Company and me." ER_37 at §§14.F, 14.G.

The District Court noted that in *Cook*, the court found the duration of the arbitration agreement was substantively unconscionable where the "agreement expressly states that it 'shall survive the termination of Employee's employment and may only be revoked or modified in a written document . . . and is signed by the President of the University.'" ER_16, citing *Cook*, 102 Cal. App. 5th at 325. The Court concluded that as in *Cook*, ModMed's "Arbitration Provision is one of indefinite duration, and thus substantively unconscionable." ER_16. The Court also noted that ModMed failed to address this issue on Reply. ER_16; SER_74-76.

As such, ModMed argues for the first time on appeal that the "absurd results of the infinite duration" of the agreement in *Cook* is "not present here," because the agreement in *Cook* required arbitration of all claims, regardless of whether they arose from the employment relationship. *See* Appellant's Br. 24. But ModMed has

waived this argument by raising it for the first time on appeal. *See El Paso v. America W. Airlines, Inc.*, 217 F.3d 1161, 1165 (9th Cir. 2000) (stating the Ninth Circuit "generally will not consider arguments raised for the first time on appeal, although we have discretion to do so"); *see also Cook*, 102 Cal. App. 5th at 325 (finding that on appeal, defendant "forfeited" its newly-raised argument that rather than an indefinite duration, the agreement should be construed to be terminable at will after a "'reasonable time'").

Nonetheless, just as the Court of Appeal held in *Cook*, "addressing the substance of this argument would not help" ModMed. *Cook*, 102 Cal. App. 5th at 325. ModMed again conflates the *Cook* court's decision regarding the unconscionably broad scope of claims with the court's decision regarding indefinite duration. *See* Appellant's Br.19-20; *Cook*, 102 Cal. App. 5th at 321-25 as compared to 326-28. The Court of Appeal's finding of an unconscionably indefinite duration was not dependent on the broad scope of claims, but rather, on the very words used in the arbitration agreement. As in *Cook*, this Court should "find the trial court did not err in holding the duration of the arbitration agreement is substantively unconscionable." *Id.* at 326.

### 5. The District Court Correctly Held the One-Sided Carve-Outs of ModMed's Claims is Substantively Unconscionable

The District Court properly held that the one-sided claims provision that requires Ms. Sandler to arbitrate "any claims," but carves out ModMed's claims

for, *inter alia*, injunctive, equitable of declaratory relief, is unconscionable. ER_13-14, 34-36. The first section of the Arbitration Provision states, "I agree that any and all controversies, claims, or disputes with anyone (including the Company and any employee, officer, director, stockholder, or benefit plan of the company, in their capacity as such or otherwise) . . . shall be subject to binding arbitration . . . ." ER_34. Moreover, the Arbitration Provision states the "agreement to arbitrate also applies to any disputes that the Company may have with me, including but not limited to, misuse of confidential information or interference with company business and workforce, unfair competition or matters involving inventions." ER_35 at §13.A.

The Arbitration Provision then *specifically exempts* claims brought by ModMed "to obtain equitable or injunctive relief such as an application for a temporary/preliminary or permanent injunction for breach of the restrictive covenants contained in this agreement." ER_35 at §13.C. The broader Employment Agreement also contains various carve-outs in which ModMed may seek: "legal action" for the unauthorized use or disclosure of Company Confidential Information; "legal relief including an injunction, declaratory relief, specific performance, and/or substantial damages" for interference with company employees after termination of employment; and "legal proceedings . . . to enforce any covenants or promises . . . to seek all available civil remedies, at law or in

equity, including, without limitation, an order of specific performance, an injunction without posting a bond, monetary damages, attorneys' fees, and costs." ER_28, 32, 34 at §§2.B, 8, 12.

The District Court correctly held that the Arbitration Provision is unfairly one-sided because it excludes ModMed's potential claims for injunctive, equitable, or declaratory relief, specific performance, and damages. ER_13-14. The Order states: "Given the disadvantages that may exist for plaintiffs arbitrating disputes, it is unfairly one-sided for an employer with superior bargaining power to impose arbitration on the employee as plaintiff but not to accept such limitations when it seeks to prosecute a claim against the employee, without at least some reasonable justification for such one-sidedness based on 'business realities.'" ER_13-14, citing *Armendariz*, 24 Cal. 4th at 117. And, as the District Court noted, ModMed "provide[d] no evidence regarding the 'business realities' that justify the one-sided carve-out." ER_14.

The recent Ninth Circuit opinion in *Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080 (9th Cir. 2024) is directly on point. In *Ronderos*, the employer's arbitration agreement had an exception from arbitration for "claims that [employer] may have against [employee] for preliminary injunctive relief." *Id.* at 1096. The Court stated that this "preliminary injunction carve-out is plainly one-sided: it preserves only [the employer's] ability to seek preliminary injunctive relief in

court." *Id.* Further, the employer (like ModMed) "did not offer any business justification for this one-sided carve-out." *Id.* at 1097. Instead, the employer argued for the first time on appeal that "business realities [] justify the carve-out" to "prevent an employee from violating a confidentiality agreement or disclosing confidential matter." *See* Appellant's Br. 28; *Ronderos*, 114 F.4th at 1097.

*Ronderos* soundly rejected the employer's contention, finding that "the one-sided preliminary injunction carve-out has no business justification and is, therefore, substantively unconscionable." *Ronderos*, 114 F.4th at 1098. Likewise, in *Nagrampa*, the Ninth Circuit held that a one-sided provision that gave the employer access "to obtain provisional remedies to protect its intellectual property" but required the employee to pursue all claims in arbitration was unconscionable and not justified by its business need to protect its proprietary information. *Nagrampa*, 469 F.3d at 1285-1287.

Furthermore, the California Supreme Court in *Ramirez v. Charter Commc'ns, Inc.*, 16 Cal. 5th 478 (2024) recently held a similar arbitration agreement with a one-sided carve out of claims was unconscionable and "unfairly one-sided because it compels arbitration of the claims more likely to be brought by an employee, the weaker party, but exempts from arbitration the types of claims that are more likely to be brought be an employer, the stronger party." *Id.* at 497; *see also Mercuro v. Superior Ct.*, 96 Cal. App. 4th 167, 177 (2002) (finding the

-43-

arbitration agreement was substantively unconscionable when it excluded "claims for injunctive [and] *any* equitable relief" because it exempted from arbitration the claims most likely brought by the defendant against its employees).

Likewise, the District Court found ModMed's Arbitration Provision unconscionable, because it excludes from arbitration "its claims for injunctive, declaratory, or other equitable relief, specific performance, damages for the unauthorized use/disclosure of confidential information, interference with company employees, and enforcement of any covenants or promises." ER_14. The District Court noted that "[m]any courts in similar circumstances have found this type of carve-out to be substantively unconscionable." ER_14, citing *Buchsbaum v. Digit. Intel. Sys., LLC*, No. 20-cv-00706-BAS-AGS, 2020 U.S. Dist. LEXIS 226555, at *17, fn. 5 (S.D. Cal. Dec. 2, 2020) (collecting cases). Because "ModMed provide[d] no evidence of the 'business realities' that justify the one-sided carve-out," the District Court properly found "the exceptions in Sections 2.B, 8, and 12 of the Employment Agreement are substantively unconscionable." ER_14. This Court should affirm the District Court's ruling.

### C. The District Court Properly Concluded That Severance is Not Appropriate Because the Unconscionable Provisions Permeate the Employment Agreement

After concluding that the Arbitration Provision contained at least a "low degree of procedural unconscionability" (ER_12) and a high degree of substantive

unconscionability (ER_13-16), the District Court declined to sever those provisions and enforce the remainder of the agreement. In ModMed's final argument on appeal, it claims that the District Court abused its discretion in doing so because it failed to apply California's "strong legislative preference" for severance. *See* Appellant's Br. 11, 29-34. As explained below, because ModMed's unconscionability permeates the entire Employment Agreement, severance was well within the District Court's discretion.

Under the abuse-of-discretion standard, the Court will not reverse a district court's ruling unless it has "a definite and firm conviction that the district court committed a clear error of judgment in the conclusion it reached." *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 422 F.3d 782, 798 (9th Cir. 2005) (citation omitted). Thus, even if this Court has "significant and serious concerns" with a District Court's exercise of its discretion, the District Court's ruling must stand unless there is "a plain error, discretion exercised to an end not justified by the evidence, a judgment that is clearly against the logic and effect of the facts as are found." *Wing v. Asarco Inc.*, 114 F.3d 986, 988 (9th Cir. 1997) (citation omitted).

### 1. Multiple Unconscionable Provisions are Indicative of an Agreement Tainted with Illegality

California Civil Code §1670.5(a) provides:

> If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court **may refuse to enforce the contract**, or it may enforce the remainder of

the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

Cal. Civ. Code §1670.5(a) (emphasis added).

"When deciding whether to sever an unconscionable provision, '[c]ourts are to look to the various purposes of the contract." *Ronderos*, 114 F.4th at 1099 (quoting *Armendariz*, 24 Cal. 4th at 124). "If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced." *Id.* In that event, severance is not required because the contract has "no lawful object of the contract to enforce." *Id.* at 1100.

The Ninth Circuit held in *Ronderos* that to determine whether the central purpose of the contract is tainted with illegality, a trial court may consider whether the "agreement contains more than one unlawful provision." *Ronderos*, 114 F.4th at 1100 (quoting *Armendariz*, 24 Cal. 4th at 123-24); *see also Lim*, 8 F.4th at 1005. "That is because multiple unconscionable clauses serve as evidence of 'a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage.'" *Ronderos*, 114 F.4th at 1100 (quoting *Lange v. Monster Energy Co.*, 46 Cal. App. 5th 436, 454 (2020)). "'In other words,' when an agreement contains 'multiple unlawful provisions, the trial court [does] not abuse its discretion in concluding

that the agreement is permeated by an unlawful purpose.'" *Id.* (quoting

*Armendariz*, 24 Cal. 4th at 124).

The Ninth Circuit recognized that "the California Supreme Court has

explained that a court 'is not permitted to cure [unconscionability] through

reformation and augmentation.'" *Id.* (quoting *Armendariz*, 24 Cal. 4th at 124).

Therefore, if "there is no single provision a court can strike or restrict in order to

remove the unconscionable taint from the agreement," then "it must void the entire

agreement." *Id.* Here, the District Court found substantive unconscionability in

four key areas (parties subject to arbitration, jury trial waiver, indefinite duration,

and one-sided claim carve-outs), evidencing an agreement tainted with illegality.

ER_12-16.

### 2. The District Court Properly Used its Broad Discretion in Declining to Sever

In *Ronderos*, the Ninth Circuit reviewed numerous cases involving

severance and found they "shed some light on the outer bounds of a trial court's

range of discretion." *Ronderos*, 114 F.4th at 1101. The following cases were cited

as cases where the trial court acted within its discretion in deciding not to sever:

*Lim*, 8 F.4th at 1006 (decision not to sever was within the trial court's discretion

when procedural unconscionability was more than minimal and agreement

contained three substantively unconscionable provisions); *Alberto v. Cambrian

Homecare*, 91 Cal. App. 5th 482, 495-96 (2023) (decision not to sever "while not

required, was within its discretion" when the agreement had low degree of procedural unconscionability and three substantively unconscionable provisions); *Beco v. Fast Auto Loans, Inc.*, 86 Cal. App. 5th 292, 313 (2022) (decision not to sever was within the trial court's discretion when procedural unconscionability was moderate and agreement contained three substantively unconscionable provisions); *Davis v. Kozak*, 53 Cal. App. 5th 897, 916-17 (2020) (disapproved on other grounds by *Ramirez*, 16 Cal. 5th at 498) (decision not to sever was within the trial court's discretion when procedural unconscionability was only minimal and agreement contained two substantively unconscionable provisions); *Ali v. Daylight Transport, LLC*, 59 Cal. App. 5th 462, 481 (2020) (decision not to sever was within the trial court's discretion when procedural unconscionability was moderate and agreement contained three substantively unconscionable provisions). *Ronderos*, 114 F.4th at 1101-02.

Additionally, the Ninth Circuit noted that in *Armendariz*, the California Supreme Court concluded that "the trial court did not abuse its discretion in concluding that the arbitration agreement [was] permeated by an unlawful purpose" because the arbitration agreement contained two unlawful provisions: an unlawful damages provision and a unilateral arbitration clause. *Ronderos*, 114 F.4th at 1102 (quoting *Armendariz*, 24 Cal. 4th at 124-26). The California Supreme Court in *Ramirez* clarified that the inquiry is more of a qualitative inquiry than a

quantitative one: "no bright-line rule *requires* a court to refuse enforcement if a contract has more than one unconscionable term." *Ramirez*, 16 Cal. 5th at 516. "Likewise, a court is not *required* to sever or restrict an unconscionable term if an agreement has only a single such term." *Id.*

Furthermore, *Ramirez* held that in "conducting this analysis, the court may also consider the deterrent effect of each option." *Ramirez*, 16 Cal. 5th at 517. As the Court explained, severing multiple unconscionable provisions from an agreement and enforcing the remainder could "'create an incentive for an employer to draft a one-sided arbitration agreement in the hope employees would not challenge the unlawful provisions, but if they do, the court would simply modify the agreement to include the bilateral terms the employer should have included in the first place.'" *Id.* (quoting *Mills v. Facility Solutions Group, Inc.*, 84 Cal. App. 5th 1035, 1045 (2022)). Although there are no bright-line numerical rules regarding severance, it is fair to say that the greater the number of unconscionable provisions a contract contains the less likely it is that severance will be the appropriate remedy. *Id.*

In *Ronderos*, the Ninth Circuit found that the District Court did not abuse its discretion in deciding not to sever when the procedural unconscionability was at least moderate, and the agreement contained at least two substantively unconscionable provisions – a one-sided preliminary injunction carve-out (like

-49-

ModMed) and a one-sided filing provision, which limited the employee's ability to vindicate his rights. *Ronderos*, 114 F.4th at 1101. Thus, the Court found, like in *Armendariz*, that "given the multiple unlawful provisions, the [District] [C]ourt did not abuse its discretion in concluding that the arbitration agreement is permeated by an unlawful purpose." *Id.* at 1102.

### 3. ModMed's Arguments Raised for the First Time on Appeal are Improper

ModMed suggests for the first time on appeal that "even if" the one-sided provision that allows ModMed to go to court for claims against the employee for equitable or injunctive relief or breach of the restrictive covenants was found to be unconscionable, this provision could be remedied by severing 54 words from that provision. *See* Appellant's Br. 31. As a threshold issue, this argument was never raised below at the District Court and therefore should not be considered on appeal. *See El Paso*, 217 F.3d at 1165 (quoting *L.A. News Serv. v. Reuters Television Int'l*, 149 F.3d 987, 996 (9th Cir. 1998)) ("[a]bsent exceptional circumstances, we generally will not consider arguments raised for the first time on appeal, although we have discretion to do so"). ModMed's proposal to cut 54 words from their Agreement is found nowhere in their Motion or Reply at the District Court. SER_3-31, 69-77. In addition, the extraction proposed by ModMed would only address only one, not all, of the provisions that the District Court found unconscionable. ER_12-16.

Likewise, ModMed's citation to *Cook* actually favors severance. In *Cook*, severance was improper where "three aspects of the agreement [were] unconscionable." *Cook*, 102 Cal. App. 5th at 329. Affirming the trial court's denial of the motion to compel arbitration, the Court of Appeal agreed that "'as it stands, the arbitration agreement is tainted with unconscionability because its central purpose appears to be the ability for the parties to arbitrate all possible disputes between each other, for an indefinite period of time, with [the employer] able to move for arbitration against it and its related entities, but [the employee] only able to move for arbitration of claims by [the employer] against her.'" *Id.* (citation omitted). Further, the *Cook* court "determined that curing the unconscionable provisions would require substantive rewriting of the arbitration agreement to contradict its plain language, and that severance would provide a windfall to [the employer]." *Id.* at 330. ModMed's reliance on *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251 (9th Cir. 2017) is also misplaced. *See* Appellant's Br. 31-32. *Poublon* involved only one unconscionable provision, and the agreement was not "permeated by unconscionability." *Poublon*, 846 F.3d at 1273.

As in *Cook*, unconscionability permeates ModMed's Employment Agreement. There are numerous unconscionable provisions, and to sever them one by one, but still reward ModMed with the desired outcome of arbitration would be contrary to public policy because it would condone the inclusion of these one-sided

-51-

provisions without incentivizing ModMed to change the Arbitration Provision used in its Employment Agreements. *Armendariz*, 24 Cal. 4th at 124; *Murrey v. Superior Ct.*, 87 Cal. App. 5th 1223, 1236 (2023). Further, like *Cook* (and as the District Court found here) curing the unconscionable provisions would require substantive rewriting of the Employment Agreement to contradict its plain language, again providing a windfall to ModMed. ER_16-18.

Because severance does not provide an adequate remedy for the pervasive unconscionability throughout the Employment Agreement, this Court should affirm the District Court's ruling that "the offending provisions of the Employment Agreement are not severable, and the Arbitration Provision is unenforceable." ER_18.

## VII.  CONCLUSION

For all of the foregoing reasons, this Court should affirm the District Court's well-reasoned Order Denying Defendant's Motion to Compel Arbitration. ER_3-18.

Respectfully submitted,

Dated: June 2, 2025                              **HAEGGQUIST & ECK, LLP**

By: /s/ *Jenna Rangel*
Jenna Rangel
Amber L. Eck
HAEGGQUIST & ECK, LLP
225 Broadway, Suite 2050
San Diego, CA 92101
Tel.: (619) 342-8000
*Attorneys for Plaintiff-Appellee*
Kara Sandler

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

**Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6**

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

9th Cir. Case Number(s) ___24-6623_____

The undersigned attorney or self-represented party states the following:

[ X ] I am unaware of any related cases currently pending in this court.

[  ] I am unaware of any related cases currently pending in this court other than the case(s)
identified in the initial brief(s) filed by the other party or parties.

[  ] I am aware of one or more related cases currently pending in this court. The case number and
name of each related case and its relationship to this case are:

**Signature** s/*Jenna Rangel*      **Date** June 2, 2025
*(use "s/*[typed name]*" to sign electronically-filed documents)*

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form:*

*http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** _____24-6623_____

I am the attorney or self-represented party.

**This brief contains 11,759 words**, including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief (select only one):

[ **X** ] complies with the word limit of Cir. R. 32-1.

[ ] is a cross-appeal brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an amicus brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or

    Cir. R. 29-2(c)(3).

[ ] is for a death penalty case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because (select only one):

    [ ] it is a joint brief submitted by separately represented parties.

    [ ] a party or parties are filing a single brief in response to multiple briefs.

    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** *s/ Jenna Rangel*_____    **Date** June 2, 2025
*(use "s/[typed name]" to sign electronically-filed documents)*

**No. 24-6623**

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

Kara Sandler,

*Plaintiff-Appellee*

v.

Modernizing Medicine, Inc.,

Defendant-Appellant

On Appeal from the United States District Court
for the Southern District of California

Case No. 3:24-cv-00812-AJB-BTC
Hon. Anthony J. Battaglia

**CIRCUIT COURT 28-2.7 ADDENDUM
TO APPELLEE'S ANSWERING BRIEF**

Jenna Rangel
Amber L. Eck
HAEGGQUIST & ECK, LLP
225 Broadway, Suite 2050
San Diego, CA 92101
Tel.: (619) 342-8000

*Attorneys for Plaintiff-Appellee*
Kara Sandler

## <u>TABLE OF CONTENTS TO ADDENDUM</u>

<u>**Page(s)**</u>

9 U.S.C. §2……………………………………………………………A-2

Cal. Civ. Code §1636……………………………………………….A-3

Cal. Civ. Code §1641……………………………………………….A-4

Cal. Civ. Code §1670.5…………………………………………….A-5

-A1-

**9 U.S.C. §2**
§ 2. Validity, irrevocability, and enforcement of agreements to arbitrate

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter 4.

**Cal. Civ. Code §1636**

§1636. Contracts, how to be interpreted

A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful.

**Cal. Civ. Code §1641**

§1641. Effect to be given to every part of contract

The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.

**Cal. Civ. Code §1670.5**
§1670.5. Unconscionable contract

(a) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

(b) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination.